**UNITED STATES of America**

v.

**Ernesto Antonio DOMINGUEZ.**

**Crim. No. B–95–161–S1.**

United States District Court,
S.D. Texas,
Brownsville Division.

Oct. 27, 1995.

---

John Crews, Assistant U.S. Attorney, Brownsville, TX, for Plaintiff.

Dick DeGuerin, DeGuerin & Dickson, Houston, TX, for Defendant.

### ORDER

VELA, District Judge.

Before the Court was Defendant's Notice of Intent to Introduce Polygraph Results and Motion for Pretrial Determination of the Admissibility Thereof. After careful consideration, this Court orally denied Defendant's Motion. Subsequently thereafter, the Government moved to dismiss the indictment against the above named Defendant. Inasmuch as this Court feels that the admission of polygraph test results will pose difficulties in the future, the Court has decided to issue this written order as some guidance.

The Fifth Circuit in *United States v. Posado*, ruled that polygraph tests are no longer per se inadmissible. 57 F.3d 428, 432 (5th Cir.1995). The Court reasoned that the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals*, —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), could no longer support a per se rule against polygraph tests. Thus, the Court determined that a "flexible inquiry" approach as used in *Daubert* should be utilized in deciding the admissibility of future polygraph results.[1] *Posado* at 432. The first requisite the Court should follow is to make a determination under Rule 104(a), whether the proffered evidence possessed is reliable and relevant.[2] The evidence must be of sufficient reliability to be admissible as "scientific, technical, or other specialized knowledge", and that the proffered evidence is relevant in the sense that it will "assist the trier of fact to understand the evidence or to determine a fact in issue". *Posado*, at 432, citing *Daubert*, ——

---

**1.** The *Daubert* Court stated "[t]he inquiry envisioned by Rule 702 is, we emphasize, a flexible one." Its overarching subject is the scientific validity—and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate". *Daubert*, —— U.S. at ——, 113 S.Ct. at 2797.

**2.** Rule 104 provides "Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or **the admissibility of evidence shall be determined by the court,** subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges. Federal Rules of Evidence, Rule 104(a) (emphasis added).

U.S. at ——, 113 S.Ct. at 2796. The Court must then look at Rule 702 of the Federal Rules of Evidence which governs the admissibility of expert testimony.[3] To fall within the ambit of Rule 702, the test must be able to assist the trier of fact in understanding the evidence or in determining a fact in issue. Finally, the Court must subject the proffered evidence to the Rule 403 balancing test.[4]

■ This Court held a *Daubert* type hearing on October 5, 1995. The purpose of the hearing was to determine whether the defendant's proffered evidence met the requirements as set out by the "flexible inquiry" approach as adopted by *Posado*. At the hearing the Defendant urged his Motion to introduce the polygraph test results as substantive evidence of his innocence. The Defendant's expert witness, Dr. Tony Barrio, PhD., testified on direct examination as to the reliability of polygraph testing. He stated that there was general acceptance in the law enforcement community for polygraph tests, and specifically, stated that his methodology, technology, and technique had all been subject to peer review, publication, scientific research, and government agency overview. Dr. Barrio also testified that polygraph tests only enjoy a seventy to ninety percent rate of accuracy for detecting the truth and accordingly, on cross-examination admitted that polygraph testing is not an exact science. He agreed that drugs or sedatives of any type could cause misleading or incorrect results, that people of different cultures could have different value systems, and that these factors do affect accuracy. This is extremely important in light of the fact that all test results are measured against the subjective values of the test examiner. For example, the test examiner may prescribe a particular value to a question while the test taker may not. Consequently, different val-

ue systems can lead to differing or incorrect results.

Other factors adduced on cross-examination also cause this Court to be suspicious of the reliability of polygraph testing. On direct examination, Dr. Barrio explained that in order to ensure accuracy, the subject had to initially engage in an exercise where he was told an untruth. He explained that this was an essential factor in the testing process, but that this procedure varies from examiner to examiner. In effect, each examiner must determine on his own exactly what will frighten the subject into telling the truth. In the present case, Dr. Barrio testified that he told the Defendant that his attorney, Mr. Dick DeGuerin, would no longer represent him if he did not pass the test. It was his opinion that this statement was sufficient to frighten the Defendant into telling the truth. Needless to say, the subjectivity of the procedures involved in polygraph testing are a concern to the Court.

Even assuming for argument that the Defendant's polygraph test was reliable and relevant, the Court is not satisfied that the Defendant was able to clear the Rule 403 hurdle. The probative value of the Defendant's polygraph test was substantially outweighed by danger of the unfair prejudice that it placed on the Government.[5] Among other considerations, the Defendant did not invite the United States to be present at the examination or have its own expert present during the pretest interview and testing process. Furthermore, counsel for the Defendant stated that the Defendant would take a polygraph sponsored by the government only if:

    1) Dr. Barrio and or a representative from the defense team was present during the exam and allowed to observe the proceedings in their entirety;

---

3. Rule 702 provides "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Federal Rules of Evidence, Rule 702.

4. Under Rule 403, "relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence". Federal Rules of Evidence, Rule 403.

5. Federal Rules of Evidence, *supra* note 3.

2) No post-test interview was conducted; and

3) Assuming the Defendant passed the government's exam, the government would dismiss the charges against him.[6]

The Court finds these prerequisites prejudicial, as well as remarkably lacking in the Defendant's expert's own protocol. While on the witness stand, Dr. Barrio stated that no polygraph test is as reliable as the first. He testified that each successive test becomes progressively less reliable because the subject becomes accustomed to the process. He further stated that to ensure reliability, only the examiner should be present in the room with the Defendant. Additionally, pre-test, and post-test interviews should be conducted, as they are essential in ensuring accurate test results. Thus, under the conditions laid out by the Defendant, it would seem impossible for the Government to conduct a reliable test in this setting. Finally, the Defendant's request that all charges be dismissed if he passed the polygraph examination reached undue prejudicial levels. This requirement effectively made the Defendant unavailable to the Government for their own polygraph test. Therefore, it is this Court's conclusion that the probative value of the Defendant's evidence was substantially outweighed by the unfair prejudice that was placed upon the Government.

■ The Court feels that there are other factors which should be considered before the Court determines that the probative value of the test is not substantially outweighed by the danger of unfair prejudice. Specifically, the Court feels the following suggestions are relevant factors:

1) That all parties be present to observe the proceedings.[7]

2) That there be a legal commitment irrevocably allowing the admission of the results by both sides.

3) That the subject commit to be examined by any polygraphic expert designated by the other side.

4) When more than one exam is contemplated, the choice of the first examiner take place by chance.

5) That the pre-test interview be allowed by all sides with all sides present.

6) That the post-test interview be allowed by all sides with all sides present.

7) That immediately prior the test the subject be examined for any sedative or drugs in his body.

8) That the rules that do not admit character evidence for truthfulness be legally waived.[8]

9) That no questions be permitted to the mental state of the defendant at the time of the alleged commission of the event.

10) The failure of the Defendant to make himself available to testify in the case should also be a consideration.

The Court does not here today state that all of these factors need be met before polygraph test results be admitted. However, it is clear that this Court is confronted with a "legal Pandora's box" with the prospect of admitting future polygraph test results. *Posado* at 436. Therefore, the Court will weigh and take into consideration the care and attention with which the parties adhere to these guidelines. As the Court in *Posado* stated "We leave much unsaid precisely because we believe that the wisdom and experi-

---

**6.** The Defendant knew that the Government would never agree to such terms. Thus, this requirement in effect made the Defendant unavailable to the Government. Such a requirement should never be allowed, as it prejudices the other party.

**7.** It is clear from the expert testimony elicited that only the examiner should be in the room with the Defendant. However, arrangements can be made whereby both parties are allowed to have their respective representatives observe the proceedings. For example, the use of hidden or open video cameras can easily be utilized by either party.

**8.** Rule 608(b) states in part "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."

ence of our federal district judges will be required to fashion the principles that will ultimately control the admissibility of polygraph evidence under *Daubert.*" *Id.* at 436. As a result, the Court feels that the previously mentioned guidelines are a necessity in mitigating the unfair prejudice that these tests can produce.

It is therefore, ORDERED, ADJUDGED AND DECREED that Defendant's Notice of Intent to Introduce Polygraph Results and Motion for Pretrial Determination of the Admissibility Thereof, should be Denied.